# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| v. | : Criminal No. 23-102-JLH |
| DARIUS MATYLEWICH, | : |
| Defendant. | : |

**<u>GOVERNMENT'S SENTENCING MEMORANDUM</u>**

Defendant is a first-time offender whose actions mark a disturbing and deliberate departure from societal norms and legal boundaries. He cultivated an illegal, exploitative relationship with an 11-year-old, ultimately abducting her from family home in New Jersey and transporting her across state lines to Delaware. Thanks to the rapid response of law enforcement, the Victim was located at the Defendant's residence and safely recovered.

Subsequent interviews and search warrants—particularly of Defendant's electronic devices—revealed that he used multiple online platforms to secretly communicate with the Victim, initiating and sustaining a sexually charged relationship that included explicit conversation, grooming techniques, and the production of child sexual abuse material ("CSAM"). As a result of these and other actions, detailed below, Defendant comes before the Court for sentencing on one count of Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b).

The government submits that a sentence within the guideline range is warranted, however, if the court sustains any of Defendant's objections, a sentence

1

at the top of the resulting guideline range is appropriate. Such a sentence accounts for the serious nature and circumstances of the offense, promotes respect for the law, provides just punishment, and considers Defendant's personal history and characteristics.[1] 18 U.S.C. § 3553(a).

## I. Factual and Procedural Background

On September 10, 2023, the Wayne, New Jersey Police Department ("WPD") responded to the Quality Inn Hotel for the report of a missing 11-year-old girl (hereinafter "the Victim").[2] The Victim's mother reported that the Victim disappeared from their hotel room at approximately 5:00 am, while she was at work. The Victim also left her cellphone and wallet behind. The Victim's brother, unaware of any danger, observed the Victim leave with a backpack and believed she was going to school. Revised Presentence Investigation Report, dated June 12, 2025 ("PSR") ¶ 17.

The Victim's mother informed law enforcement that she believed the Victim could be with an adult male named "Darius." Her suspicion stemmed from a June 2023 incident, in which the Victim went missing in Paterson, New Jersey and returned home a few hours later. Following this incident, the Victim disclosed she had been communicating with an adult male named "Darius" via Discord, Snapchat,

---

[1] As it does in every case, the government will be filing a sealed Attachment A to this Sentencing Memorandum.

[2] At the time of this incident, the Victim was residing at the Quality Inn with her mother, grandmother, and two brothers, having recently been evicted from a home in Paterson, New Jersey.

2

and TikTok. The Victim's mother also provided a Facebook account with the username of "Darius Styles." *Id*. ¶ 18.

WPD canvassed nearby businesses and hotels but found no trace of the Victim. They expanded their search and, through investigative techniques, identified "Darius" as the Defendant, who resided in Bear, Delaware. *Id*. ¶ 19.

WPD then called the Defendant. During a 30-minute recorded call, the Defendant admitted that he picked up the Victim from the Quality Inn in New Jersey and drove her to his residence in Bear, Delaware. Also, during the call, the Defendant stated that he believed the Victim was 13 years old, not 11 years old. *Id*. ¶ 20.

Although he first denied knowing her, his story quickly changed and he admitted the Victim was inside his home in Bear, Delaware. He repeatedly denied a sexual relationship but stated that it was "something that just happened," that he thought he was "doing the right thing," and was "sorry" for what happened. *Id*. ¶ 21.

While still on the phone with the Defendant, New Castle County Police Department ("NCCPD") responded to the Defendant's residence. Upon arrival, the Defendant exited while still on the phone with WPD, NCCPD seized the Defendant's phone, and the FBI later searched it pursuant to a warrant. *Id*. ¶ 22.

When confronted, the Defendant admitted that the Victim was inside the residence, and she was located without incident. During his interview, the Defendant continued to deny a sexual relationship with the Victim but admitted to communicating with her on the social media applications Discord, Snapchat, and

3

TikTok, and via the online game Roblox. He further admitted travelling to New Jersey as early as July 2023 to meet her in person. *Id*. ¶ 24.

In a separate interview with the Victim, she also denied a sexual relationship and gave a similar recitation of events to the Defendant. She reiterated the story a few days later in an interview with a Child Forensic Interviewer. However, messages and videos later discovered on the Defendant's phone contradicted their denials. *Id*. ¶ 25.

A forensic examination of the Defendant's phone revealed that Defendant and the Victim communicated frequently—over TikTok, SnapChat, and Roblox—and those conversations often turned sexual. *Id*. ¶ 26-38. Defendant's cellular phone also provided investigators with location information, indicating that Defendant travelled to northern New Jersey on at least eight (8) occasions. *Id*. ¶ 26. Moreover, while reviewing the contents of the Defendant's phone, the FBI located videos and images of child pornography of the Victim. Defendant generated the videos and images by covertly using the screen record function of his iPhone to record SnapChat and Facetime conversations between he and the Victim. *Id*. ¶ 32.

Investigators also discovered hundreds of stored videos and images of the Victim within his "Hidden" folder of the Apple Photos application, which could only be accessed by the Defendant via Apple's facial recognition, FaceID. There, investigators located a screen recording of a Snapchat conversation in which he directed the Victim to masturbate. The Victim replied by sending a video of her doing as directed, with her genitalia visible. The screen record function captured, in real

4

time, the Defendant opening the video, viewing it, saving it, and storing it in his "Hidden Folder"—therefore producing more child sexual abuse material. *Id.* ¶ 34.

On December 14, 2023, a federal Grand Jury returned an indictment charging Defendant with one count of Coercion and Enticement of a Minor, 18 U.S.C. § 2422(b), and one count of Production of Child Pornography, 18 U.S.C. § 2251(a). The Defendant was arrested and remains detained at the Federal Detention Center ("FDC") in Philadelphia. *Id.* ¶ 41.

While at the FDC, the Defendant engaged in conversation with numerous inmates, detailing the facts of his case. More specifically, the Defendant described, in graphic detail, his sexual encounters with the Victim—belying his (and the Victim's) previous denials. On March 20, 2024, investigators conducted a proffer with Defendant's former cellmate, who stated the Defendant admitted to having sexual intercourse with the Victim. *Id.* ¶¶ 43-44.

On May 31, 2024, Defendant entered a guilty plea to Count One and admitted that he unlawfully and knowingly used a facility and means of interstate and foreign commerce, namely a cellular telephone and the internet, to attempt to persuade, induce, entice, and coerce an individual under the age of eighteen (18), to wit the Victim, to engage in sexual activity for which he could have been charged with a criminal offense.

**II.   The Defendant's Guidelines Objections**

Defendant objects to the calculated sentencing range, arguing that the United States Probation Office relied on a statement by Defendant's former cellmate and

5

incorrectly misapplied enhancements pursuant to §2G1.3(b)(4)(A) and §4B1.5(b)(1). Defendant also requests that the Court impose a downward variance commiserate with Defendant's subjective belief that the Victim was thirteen (13) years old at the time of the offense. *See* Defendant's Sentencing Memorandum, D.I. 49.

The government submits that the United States Probation Office properly included the information received from Defendant's former cellmate, correctly applied the disputed guideline enhancements, and that a downward variance is not warranted.

A. <u>The Information Provided by Defendant's Former Cellmate is Relevant for the Court's Consideration and is Corroborated by Other Evidence.</u>

First, Defendant objects to Probation's inclusion of the Defendant's admissions to his former cellmate to having sexual contact—including intercourse—with the Victim. *See* ¶¶ 43-44. The government submits that such information is corroborated by other evidence contained in the PSR, relevant to the Court's determination of an appropriate sentence, and was properly included in the PSR.

Indeed, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense, which a Court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661; *Witte v. United States*, 515 U.S. 389, 397-401 (1995) (noting that sentencing courts have traditionally considered a wide range of information without the procedural protections of a criminal trial, including information concerning uncharged criminal conduct, in sentencing a defendant within the range authorized by statute).

In determining relevant facts at sentencing, reliable hearsay is admissible. *See United States v. Sciarrino*, 844 F.2d 95 (3d Cir. 1989). The Sentencing Guidelines themselves provide that "[i]n resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." *See* U.S.S.G. § 6A1.3(a).

The commentary to § 6A1.3 further explains that "[i]n determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial. See 18 U.S.C. § 3661." *See* U.S.S.G. § 6A1.3, comment. And any information may be considered, so long as it has "sufficient indicia of reliability to support its probable accuracy." *See Id.*

In this case, information provided by Defendant's former cellmate was corroborated by forensic digital evidence recovered from Defendant's own phone—including numerous conversations with the Victim, google searches, and location information demonstrating that Defendant was in physical proximity to the Victim on at least eight (8) occasions. For example, on August 24, the Defendant's phone pinged in NJ throughout the day. After the last ping, the Defendant then searched "how long do hickeys last," "what does it mean when a girl throws up after sex," and "can you get your period and still be pregnant." *See* PSR, ¶ 26, pp. 8-11.

7

Further, several weeks later in the below exchange, Defendant requested fellatio from the Victim in exchange for a Roblox gift card—a suggestion, which does not shock the Victim:

| 9/9/2023 | 11:28 AM | Victim | i wanna pay u back but I thought of a good idea |
|---|---|---|---|
| 9/9/2023 | 11:28 AM | Defendant | What's that |
| 9/9/2023 | 11:29 AM | Victim | I redeemed the Roblox card u gave me I'm not spending the Robux yet I wanna use the 10 bucks for another Roblox card but I wanna pay u back at the same time I don't wanna seem selfish tho |
| 9/9/2023 | 11:29 AM | Defendant | you don't have to pay me back it's fine |
| 9/9/2023 | 11:29 AM | Victim | u sure dude? |
| 9/9/2023 | 11:29 AM | Defendant | ye |
| 9/9/2023 | 11:30 AM | Defendant | Well maybe there's one thing on my mind you could do ;) |
| 9/9/2023 | 11:30 AM | Victim | bru |
| 9/9/2023 | 11:30 AM | Defendant | Lol |
| 9/9/2023 | 11:30 AM | Defendant | I'm kinda dead sss |
| 9/9/2023 | 11:30 AM | Defendant | Ass |
| 9/9/2023 | 11:30 AM | Victim | mk |
| 9/9/2023 | 11:30 AM | Defendant | Yk what I mean right |
| 9/9/2023 | 11:31 AM | Victim | hmm ye but I want u to say it |
| 9/9/2023 | 11:31 AM | Defendant | Oh yeah |
| 9/9/2023 | 11:31 AM | Victim | mhm |
| 9/9/2023 | 11:31 AM | Defendant | suck my d lol |
| 9/9/2023 | 11:31 AM | Victim | lol mk |
| 9/9/2023 | 11:31 AM | Defendant | Alr lol |
| 9/9/2023 | 11:31 AM | Defendant | Or the 😈 |
| 9/9/2023 | 11:31 AM | Victim | |
| 9/9/2023 | 11:32 AM | Defendant | Like a quick one lol |
| 9/9/2023 | 11:32 AM | Defendant | I can see you getting these tbh |
| 9/9/2023 | 11:32 AM | Victim | mk |
| 9/9/2023 | 11:32 AM | Victim | wowww |
| 9/9/2023 | 11:33 AM | Defendant | Sorryyy |
| 9/9/2023 | 11:34 AM | Defendant | So like |
| 9/9/2023 | 11:34 AM | Victim | hm |
| 9/9/2023 | 11:35 AM | Defendant | can you try to check just to see when you can for me |
| 9/9/2023 | 11:35 AM | Victim | what? |
| 9/9/2023 | 11:35 AM | Defendant | The room next door |

| 9/9/2023 | 11:35 AM | Victim | alrr I'll try |
|---|---|---|---|
| 9/9/2023 | 11:35 AM | Victim | they closed the door tho |

See PSR ¶ 28-29, pp. 11-14.

Defendant concludes the exchange by asking the Victim to check if there is a vacancy in the hotel room next to hers. Defendant then reminisces about "being with" the Victim and then indicates that "[he] wants to right now" and says that he's going to book the room:

| 9/9/2023 | 11:56 AM | Defendant | how long has it been since we said we been together |
|---|---|---|---|
| 9/9/2023 | 11:56 AM | Victim | idek |
| 9/9/2023 | 11:56 AM | Defendant | hm ok. Like a month or two idk |
| 9/9/2023 | 11:57 AM | Victim | we both don't know lmao |
| 9/9/2023 | 11:57 AM | Defendant | Lmao |
| 9/9/2023 | 11:57 AM | Defendant | Well it's been a month ik that |
| 9/9/2023 | 11:58 AM | Victim | mk |
| 9/9/2023 | 11:58 AM | Defendant | Mhm |
| 9/9/2023 | 12:01 PM | Defendant | ngl I want to rn |
| 9/9/2023 | 12:01 PM | Victim | what? |
| 9/9/2023 | 12:01 PM | Defendant | Book the room |
| 9/9/2023 | 12:01 PM | Victim | oh |

See Id.

Approximately two hours later, Defendant's cellular phone received an automated text message confirming his reservation at the Quality Inn. Id at ¶ 29, p. 10. Later that evening, the Victim sent a message to Defendant indicating that she "loves his whole body:"

| 9/9/2023 | 6:10 PM | Victim | listen, I love everything abt u I always mean that ok ilysm till I die bro  I love ur whole body idc if u have insecurities ur insecurities are loved by me ok. |
|---|---|---|---|

Location information then placed Defendant's phone in the vicinity of the Quality Inn later that same night, until Defendant absconded with the Victim the following day. *Id*. at ¶ 29, pp. 10-11.

Although Defendant may attempt to argue that these and other conversations were mere fantasies about possible future sexual contact, the context suggests otherwise. The digital evidence in this case provides strong circumstantial evidence that sexual contact occurred between the Defendant and the Victim, corroborating the cellmate's statements. Because the statements possess "sufficient indicia of reliability" they may be relied upon for sentencing.

> B. <u>Reliable Evidence Establishes that Defendant Engaged in a Sexual Act or Sexual Contact with the Victim.</u>

In tandem with Defendant's objection to inclusion in the PSR of the cellmate's statements, Defendant next objects to the two-level enhancement applied pursuant to U.S.S.G. §2G1.3(b)(4)(A). Although the government contends that reliable evidence—i.e. communications between Defendant and the Victim, coupled with the cellmate's statements—establish that there was physical, sexual contact between the two (up to and including sexual intercourse), the Court may also impose the enhancement based on the undisputed offense conduct wherein Defendant directed the Victim to masturbate.

U.S.S.G. § 2G1.3(b)(4)(A) applies if "the offense involved the commission of a sex act or sexual contact." Application Note 1 incorporates the definitions of "sexual act" and "sexual contact" as stated in 18 U.S.C. § 2246(2)–(3). "Sexual act" is "the intentional touching, not through the clothing, of the genitalia of another person who

has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(2)(D). "Sexual contact" is "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks *of any person* with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire *of any person.*" 18 U.S.C. § 2246(3) (emphasis added).

The Third Circuit previously found that the language of §2G1.3(b)(4)(A) is plain and unambiguous in that "any" person means "every" person—which includes both defendant and victim. *See United States v. Pawlowski*, 682 F.3d 205 (3d Cir. 2012). In *Pawlowski*, the Court applied the enhancement where a defendant sent a video of himself masturbating to an undercover agent posing as a fifteen-year-old. *Id.* The Court reasoned that "of any person" included the defendant touching himself and did not require touching of the victim. *Id.* at 212.

Further, numerous Courts have found that "sexual contact" occurred when victims touch themselves at a defendant's direction, just like the case at bar. *Id.*, *citing United States v. Shafer*, 573 F.3d 267, 279 (6th Cir. 2009). *See also*, *United States v. Raiburn*, 20 F.4th 416 (8th Cir. 2021) (sexual contact occurred when defendant directed minor victim to masturbate); *United States v. Butler*, 65 F.4th 199 (5th Cir. 2023) (sexual contact includes coerced masturbation of a victim); *United States v. Sanchez*, 30 F.4th 1063 (11th Cir. 2022), *cert denied*, ---U.S.---, 143 S. Ct. 227, 214 L.Ed.2d 90 (2022) (minor victim's masturbation for purposes of producing child pornography constituted sexual act or sexual contact).

Because the Victim qualifies as "any person," sexual contact occurred when the Victim intentionally touched herself at the Defendant's direction with the intent to arouse or gratify the sexual desire of Defendant. Therefore, U.S.S.G. §2G1.3(b)(4)(A) enhancement should apply and the Court should overrule the objection.

C. <u>Reliable Evidence Establishes that Defendant Engaged in a Pattern of Activity Involving Prohibited Sexual Conduct.</u>

Next, Defendant objected to the application of U.S.S.G. §4B1.5(b), which provides for a 5-level increase, above that determined under Chapters Two and Three, if "the defendant engaged in a pattern of activity involving prohibited sexual conduct." U.S.S.G. § 4B1.5(b)(1) provides that:

> In any case in which the defendant's instant offense of conviction is a *covered sex crime*, neither §4B1.1 nor subsection (a) of this guideline applies, *and the defendant engaged in a pattern of activity involving prohibited sexual conduct*: [t]he offense level shall be 5 plus the offense level determined under Chapters Two and Three."

U.S.S.G. § 4B1.5(b)(1) (emphasis added). A "covered sex crime" is

(A) *an offense, perpetrated against a minor*, under

    (i) chapter 109A of title 18, United States Code;

    (ii) chapter 110 of such title, not including trafficking in, receipt of, or possession of, child pornography, or a recordkeeping offense;

    (iii) *chapter 117* of such title, not including transmitting information about a minor or filing a factual statement about an alien individual; or

    (iv) 18 U.S.C. § 1591; or

*(B) an attempt or a conspiracy to commit any offense described in subdivisions (A)(i) through (iv) of this note.*

U.S.S.G. §4B1.5, Application Note 2 (emphasis added). Accordingly, Defendant's instant offense of conviction of one count of Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b)—which falls within chapter 117—is a "covered sex crime."

Under U.S.S.G. § 4B1.5(b), a defendant engaged in a "pattern of activity involving prohibited sexual conduct" if on at least two separate occasions, the defendant engaged in "prohibited sexual conduct" with a minor. U.S.S.G. §4B1.5, Application Note 4. Relevant to this case, as defined in Application Note 4(A)(i) of U.S.S.G. § 4B1.5, prohibited sexual conduct means "any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B). . . ," which include offenses "(A) under this chapter [chapter 117], chapter 109A, chapter 110, . . . or (B) under State law for an offense consisting of conduct that would have been an offense under a chapter referred to in subparagraph (A) if the conduct had occurred within the special maritime and territorial jurisdiction of the United States." 18 U.S.C. § 2426(b)(1). The occasions of "prohibited sexual conduct" to support the enhancement can have occurred during the instant offense and do not have to have resulted in a conviction. *See* U.S.S.G. § 4B1.5, Application Note 4(B).

As set forth above, the Defendant has been convicted of an act constituting prohibited sexual conduct. PSR ¶5. Pursuant to his guilty plea colloquy and the unobjected offense conduct, Defendant also admitted to conducting an additional covered act, the Production of Child Pornography—a violation of 18 U.S.C. § 2251(a) (a crime within chapter 110).

In order to prove that offense at trial, the government needs to establish the following elements: 1) at the time of the offense the victim was under eighteen (18) years old; 2) the defendant employed, used, persuaded, induced, enticed, or coerced the victim to take part in a sexually explicit conduct for the purpose of producing a visual depiction of such conduct; and 3) the visual depiction was actually transported, using any means or facility of interstate commerce, or across state lines or in foreign commerce. 18 U.S.C. § 2251(a).

Here, Defendant admitted to facts establishing each of those elements—that the Victim was eleven (11) years old, that he encouraged her to film herself masturbating and share it with him, and that he saved the resulting video to his iPhone. PSR ¶ 34. As this establishes a second act of covered sexual conduct, the 5-level enhancement pursuant to U.S.S.G. §4B1.5(b) is properly applied.

Moreover, although this application of U.S.S.G. §4B1.5(b) relies on the same offense conduct as §2G1.3(b)(4)(A), discussed *supra*, it is not "double counting." There is no double counting when a court punishes "the same act using cumulative Sentencing Guidelines if the enhancements bear on 'conceptually separate notions relating to sentencing.'" *United States v. Reyes Pena*, 216 F.3d 1204, 1209 (10th Cir. 2000) (quoting *United States v. Lewis*, 115 F.3d 1531, 1537 (11th Cir. 1997)). Put another way, "cumulative sentencing is permissible when the separate enhancements aim at different harms emanating from the same conduct." *Reyes Pena*, 216 F.3d at 1209-10.

The harm addressed by application of U.S.S.G. §4B1.5(b) is distinct from that addressed by §2G1.3(b)(4)(A). Section 2G1.3(b)(4)(A) is an offense-specific enhancement that increases a defendant's guidelines based on specific characteristics of the offense of conviction, while §4B1.5(b) addresses a defendant's continuing danger to the public. *See United States v. Seibert*, 971 F.3d 396, 400-401 (3d Cir. 2020). Moreover, the Guidelines expressly contemplate application of both enhancements to the same conduct. *Id*. at 401, *citing* § 4B1.5(b)(1) ("The offense level shall be 5 *plus the offense level determined under Chapters Two and Three*.") (emphasis added). Thus, the Court should apply the 5-levelenhancement pursuant to U.S.S.G. §4B1.5(b) and overrule the objection.

D. Defendant is not Entitled to a Downward Variance Based on Defendant's Subjective Belief of Victim's Age.

Finally, although Defendant acknowledges proper application of the 8-level enhancement pursuant to U.S.S.G. §2G1.3(b)(5), he requests this court make an exception just for him and impose a downward variance commiserate with his subjective belief of the Victim's age at the time of the offense. In support, Defendant argues that it was reasonable for him to believe the Victim's representation that she was thirteen (13) based on her appearance, and that the Victim was only two months away from turning twelve (12) at the time of the offense. *See* Defendant's Sentencing Memorandum, D.I. 49, pp. 6-7.

The demarcation of twelve (12) years of age in §2G1.3(b)(5) is not an arbitrary number. Rather, the eight-level enhancement reflects the Sentencing Commission's judgment that a sex offense involving a child under the age of twelve is more serious.

15

This demarcation is reflected elsewhere in the law, likely because children under the age of twelve are generally considered pre-pubescent. *See, e.g.,* 18 U.S.C. § 2241(c) (imposing a higher mandatory minimum sentence if a defendant travels across state lines to engage in sex with a minor under the age of twelve); 18 U.S.C. § 2244(c) (doubling the statutory maximum sentence if the sexual contact is with a child under the age of twelve).

Here, Defendant seeks to downplay his culpability for crossing that line of demarcation by placing the blame on the victim for mispresenting her age and for appearing older. This argument is misguided, and Defendant's request should be denied.

### III. Sentencing Recommendation

The government submits that a guideline sentence is sufficient but not greater than necessary to meet the goals of sentencing. 18 U.S.C. § 3553(a). In the alternative—should the Court sustain any of Defendant's objections to the PSR—the government requests a sentence at the top of the resulting guideline range, to reflect the serious nature of the offense.

A. <u>The nature and seriousness of the offense supports the government's recommended sentence</u>.

The nature and circumstances of Defendant's offense conduct are deeply troubling. Defendant communicated with the Victim—an eleven-year-old child—over a variety of digital applications for a period of approximately two months. He asked her about pornography, her panties, and told her he loved her. He scoured the internet for the Victim, including her address, name, and schools. He travelled to

New Jersey on multiple occasions and followed the Victim going about her day. He google-searched whether the Victim might get pregnant hours after visiting, he suggested she perform fellatio on him, and he expressed a desire to get her alone in a hotel room. His conduct is unacceptable.

And—all along—Defendant knew what he was doing was wrong. He deleted conversations. He hid from the Victim's mother. He used code words and switched applications to avoid being reported. He used the screen record function to record exchanges that the Victim thought would be automatically deleted. And he squirreled those conversations and images away in a hidden folder only accessible by FaceID.

Defendant was able to do all this because took advantage of a child's unstable family situation to befriend her. Although Defendant has argued that the relationship began as a misguided attempt to help the Victim, the communications between them prove otherwise. The degree of psychological harm that the Defendant caused the Victim—an eleven-year old child who trusted him—cannot be overstated. For these reasons, the nature and seriousness of the offense counsel that a guideline sentence is appropriate.

    B. <u>The government's recommended sentence properly takes into account Defendant's personal history and characteristics and will provide deterrence</u>.

Defendant's personal history and characteristics further suggest that the government's recommended sentence is appropriate. At the time of the offense, Defendant was underemployed as a Door Dash driver and spent most of his free time

17

playing video games.  Defendant resided with his mother, and did not appear to have much motivation in life.  In short, he had little social connection outside of gaming and nothing to check his impulsivity.

Like his relationship with the Victim in this case, Defendant's prior two relationships appear to have started online and resulted in Defendant quickly latching on.  The difference is, of course, that those relationships were with grown women who were able to end things.  While Defendant does not have any prior convictions, his psychological evaluation places him at a *moderate* risk for reoffending.  Notably, the evaluator acknowledged that Defendant's risk factors would have been higher if he was released in the community. D.I. 49, Sealed Exhibit A, p. 21.

Although it's commendable that Defendant has taken advantage of classes available at the FDC, he cannot be considered rehabilitated.  Given his risk of reoffending, a lengthy term of incarceration is required to deter Defendant from future criminal activity.

*   *   *

**IV.     Conclusion**

For the aforementioned reasons, the government submits that a custodial sentence within the guideline range is sufficient, but not greater than necessary to accomplish the goals of sentencing.

        Respectfully submitted,

        DYLAN J. STEINBERG
        Acting United States Attorney


By:  */s/ Michelle Thurstlic-O'Neill*
        Michelle Thurstlic-O'Neill
        Kevin P. Pierce
        Assistant United States Attorney

Dated:  June 25, 2025